**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| TELISHA WATTS, | : | MOTION TO VACATE |
| Fed. Reg. No. 60102-019, | : | 28 U.S.C. § 2255 |
|     Movant, | : | |
| | : | CRIMINAL ACTION NO. |
| v. | : | 1:08-CR-103-6-RWS-CCH |
| | : | |
| UNITED STATES OF AMERICA, | : | CIVIL ACTION NO. |
|     Respondent. | : | 1:10-CV-3848-RWS-CCH |

**ORDER FOR SERVICE OF REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE**

Attached is the report and recommendation of the United States Magistrate Judge in this action in accordance with 28 U.S.C. § 636(b)(1) and this Court's Civil Local Rule 72. Let the same be filed and a copy, together with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the report and recommendation within fourteen (14) days of service of this Order. Should objections be filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court. If no objections are filed, the

report and recommendation may be adopted as the opinion and order of the District Court and any appellate review of factual findings will be limited to a plain error review. *United States v. Slay*, 714 F.2d 1093 (11th Cir. 1983).

The Clerk is **DIRECTED** to submit the report and recommendation with objections, if any, to the District Court after expiration of the above time period.

**IT IS SO ORDERED** this 27th day of July, 2011.

_____
C. CHRISTOPHER HAGY
UNITED STATES MAGISTRATE JUDGE

2

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| TELISHA WATTS, | : | MOTION TO VACATE |
| Fed. Reg. No. 60102-019, | : | 28 U.S.C. § 2255 |
|     Movant, | : | |
| | : | CRIMINAL ACTION NO. |
| v. | : | 1:08-CR-103-6-RWS-CCH |
| | : | |
| UNITED STATES OF AMERICA, | : | CIVIL ACTION NO. |
|     Respondent. | : | 1:10-CV-3848-RWS-CCH |

**MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION**

Movant Telisha Watts has filed the instant motion to vacate pursuant to 28 U.S.C. § 2255. Movant seeks to challenge the constitutionality of her sentences, which were imposed on November 20, 2008, following a guilty plea entered in the Northern District of Georgia.

I.   Procedural History

On March 11, 2008, a grand jury in the Northern District of Georgia returned a twenty-seven count indictment against Movant and her co-defendants. (Doc. 1). Movant was charged with seven counts: (1) a conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349 (Count 1);[1] (2) four specific instances

---

[1] Specifically, as discussed further in Section III.C., *infra*, the conspiracy was based on a scheme whereby one co-defendant stole actual SunTrust checking account information from certain account holders and sold it to another co-defendant. That co-defendant proceeded to use the stolen account information to

of bank fraud related to the theft of the account information, and production and use of the counterfeit checks, in violation of 18 U.S.C. §§ 1344 and 2 (Counts 22 through 25); and (3) two counts of aggravated identity theft related to the use of a means of identification of the account holder whose account was compromised using the counterfeit checks, in violation of 18 U.S.C. §§ 1028A(a)(1) and 2 (Counts 26 and 27).  On September 18, 2008, Movant entered into a guilty plea to Counts 1 and 26.  (Doc. 62).  The plea agreement contains a waiver of Movant's appellate and collateral rights ("appellate waiver").  (Doc. 62, Attach. 1 at ¶¶ 2, 9).

On November 20, 2008, Movant was sentenced to 21 months' imprisonment on Count 1, a consecutive 24 months' imprisonment on Count 26, to be followed by five years of supervised release, a $200.00 special assessment, and restitution

---

produce counterfeit checks on the stolen accounts, and gave those counterfeit checks to Movant and other runners.  Movant and the other runners would drive other co-defendants who possessed fake identification documents containing the names that matched the account holders to retail stores where they would use the counterfeit checks and fake identifications to purchase retail merchandise.

2

in the amount of $288,643.59 to be paid jointly and severally with her co-defendants.  (Doc. 74).[2]  Movant did not appeal her sentences.

Movant filed the instant § 2255 motion on October 21, 2010.  (Doc. 137). In the motion, Movant raises a claim that her conviction should be vacated because the Government failed to establish that she had any knowledge that the means of identification belonged to other persons, as required by the United States Supreme Court in *Flores-Figueroa v. United States*, __ U.S. ___, 129 S. Ct. 1886 (2009), and Movant is therefore actually innocent of aggravated identity theft.  Movant argues that this actual innocence claim is not encompassed by the appellate waiver in her plea agreement and excuses her procedural default of the claim.

Respondent argues that Movant's claim is procedurally barred because:  (1) it is untimely; (2) the appellate waiver bars the claim, and (3) Movant did not raise the issue on appeal.  Because the undersigned agrees with the first and third arguments, it is not necessary to discuss whether the appellate waiver bars Movant's claims.[3]

---

[2] Movant was given 12 months' credit for time served on a related state charge.  (Doc. 141 at 12-13).

[3] A claim of actual innocence would appear to be excluded from enforcement of a waiver of appellate or collateral relief.  *See*, *e.g.*, *United States*

3

AO 72A
(Rev.8/82)

II.     Standard of Review

Congress enacted § 2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally-imposed sentences. *United States v. Jordan*, 915 F.2d 622, 625 (11th Cir. 1990). Pursuant to § 2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject

---

*v. Ray*, 358 F. App'x 329, 330 (3d Cir. 2009) (indicating that actual innocence may be an exception to enforcing an appellate waiver); *United States v. Torres-Oliveras*, 583 F.3d 37, 42-43 (1st Cir. 2009) ("The miscarriage of justice exception [to enforcing an appellate waiver] requires a strong showing of innocence, unfairness, or the like" and "must be applied sparingly and without undue generosity.") (quotation marks and citations omitted); *United States v. Jaquez-Diaz*, Nos. CV-08-0569-PHX-PGR (MHB), CR-04-0021-PHX-PGR, 2009 WL 249430, at *6 (Feb. 2, 2009) (indicating that an actual innocence claim would be a basis for disregarding an appellate waiver if the movant demonstrated "that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."). Movant, however, has not demonstrated actual innocence. *See* Discussion *infra*, at Section III.C.

4

to collateral attack." *Hill v. United States*, 368 U.S. 424, 426-27 (1962); *see generally United States v. Hayman*, 342 U.S. 205 (1952).

"To obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Movant must establish that the facts surrounding his claim present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

This Court may deny § 2255 relief without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see Long v. United States*, 883 F.2d 966, 968 (11th Cir. 1989). As discussed below, Movant's § 2255 motion and the record in this case conclusively show that she is not entitled to relief in connection with her claim. Thus, no evidentiary hearing is required.

5

III.  Analysis

   A.  The Motion to Vacate is Untimely.

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal prisoners must file a 28 U.S.C. § 2255 motion to vacate within one year of the latest of four specified events:

   (1) the date on which the judgment of conviction becomes final;

   (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

   (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

   (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

In this case, the event governing the one-year limitation period is the date Movant's convictions and sentences became final. Movant was convicted and sentenced on November 20, 2008, and Movant did not appeal her sentences. Thus, Movant's convictions became final on December 1, 2008, when the ten-day period

6

for seeking appellate review expired.[4] *See* Fed. R. App. P. 4(b)(1); *Mederos v. United States*, 218 F.3d 1252, 1253 (11th Cir. 2000) (judgment of conviction became final ten days after it was entered where no timely notice of appeal was filed). Thus, Movant had until December 1, 2009, to file a § 2255 motion. The instant motion was filed on October 21, 2010, nearly one year beyond the statutory time deadline.

Movant claims that this Court should entertain her untimely motion because the Supreme Court did not render its decision in *Flores-Figueroa* until May 4, 2009. In order to prove identity theft at the time that Movant was convicted and sentenced, Eleventh Circuit precedent did not require the Government to establish that the defendant knew that the stolen means of identification actually belonged to another person. *See United States v. Hurtado*, 508 F.3d 603, 609 (11th Cir. 2007). After she was convicted and sentenced, however, the United States Supreme Court rejected the Eleventh Circuit's interpretation and held that the Government must prove such knowledge. *Flores-Figueroa*, 129 S. Ct. at 1888, 1894; *see also United States v. Gaspar*, No. 09-10724, 2009 WL 2917740, at *4-5

---

[4] Because November 30, 2008, fell on a Sunday, Movant had until the next business day, Monday, December 1, 2008, to file her appeal. *See* Fed. R. App. P. 26(a)(1)(C).

7

(11th Cir. Sept. 14, 2009); *United States v. Ehrlich*, 334 F. App'x 216, 217 (11th Cir. 2009). The Government concedes that *Flores-Figueroa* applies retroactively to cases on collateral review. (Doc. 145 at 9); *see United States v. Grajeda-Gutierrez*, 372 F. App'x 890, 893 (10th Cir. 2010); *United States v. Berry*, 369 F. App'x 500, 502 (4th Cir. 2010). That retroactive application, however, does not save the instant untimely § 2255 motion.

If the Court were to construe the limitation period beginning when the right Movant asserts was newly recognized by the Supreme Court under 28 U.S.C. § 2255(f)(3), the one-year period would have begun on May 4, 2009, the date of the *Flores-Figueroa* decision. *See Dodd v. United States*, 365 F.3d 1273, 1281 (11th Cir. 2004) (holding limitation period for a right newly recognized by the Supreme Court and retroactively applicable began on the date of the Supreme Court's decision). In that instance, Movant had one year, or until May 4, 2010, to file the instant § 2255 motion. The motion, filed over five months later on October 21, 2010, still is untimely.

B.     Movant's Claim is Procedurally Defaulted.

Moreover, in general, a movant must advance an available challenge to her conviction on direct appeal, or else the Court must consider the challenge

8

procedurally barred in a § 2255 proceeding. *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994). "A defendant can avoid a procedural bar only by establishing one of the two exceptions to the procedural default rule. Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error." *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). "Under the second exception, a court may allow a defendant to proceed with a § 2255 motion despite his failure to show cause for procedural default if 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Lynn*, 365 F.3d at 1234-35 (quoting *Mills*, 36 F.3d at 1055).

Movant did not pursue her claim on direct appeal. To the extent that Movant could argue as cause for her procedural default the fact that at the time her conviction was final Eleventh Circuit precedent did not require proof of knowledge that the stolen means of identity belonged to an actual person, her argument must fail. *See Bousely v. United States*, 523 U.S. 614, 623 (1998) ("[F]utility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time.") (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35

9

(1982)). Moreover, the issue was by no means novel at the time Movant was convicted, since at that time three Circuit Courts disagreed with the Eleventh Circuit and required proof of such knowledge. *See United States v. Godin*, 534 F.3d 51 (1st Cir. 2008); *United States v. Miranda-Lopez*, 532 F.3d 1034 (9th Cir. 2008); *United States v. Villanueva-Sotelo*, 515 F.3d 1234 (D.C. Cir. 2008). Because the basis of Movant's claim therefore was available to Movant at the time she was convicted, and despite Eleventh Circuit precedent at that time, Movant has not demonstrated cause for her procedural default. *See Reed v. Ross*, 468 U.S. 1, 16 (1984) (holding that a procedural claim demonstrates cause only if it "is so novel that its legal basis is not reasonably available to counsel"); *see also United States v. Mellor*, Nos. 7:10-cv-80225, 7:07-cr-00003, 2010 WL 3585892, at *4 (W.D. Va. Sept. 9, 2010) (holding movant did not show cause for the procedural default of his *Flores-Figueroa* claim even though Circuit precedent did not require proof of knowledge that the stolen means of identification belonged to someone else, since futility does not constitute cause and the issue was not novel based on other Circuit decisions at the time of his appeal).

### C.     Movant Has Not Demonstrated Actual Innocence

Movant argues, however, that she is actually innocent of aggravated identity theft because the Government did not prove that she knew that the checking accounts and identities used in the scheme belonged to actual people. Actual innocence may lift the bar to consideration of both untimely and procedurally defaulted § 2255 claims. *See United States v. Montano*, 398 F.3d 1276, 1284 n.8 (11th Cir. 2005). Movant, however, has not met her burden of demonstrating that she is actually innocent of aggravated identity theft.

First, in order to demonstrate a fundamental miscarriage of justice, i.e., "that constitutional error has caused the conviction of an innocent person," a movant must present "new, reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," which demonstrates that "it is more likely than not that no reasonable juror would have convicted [her]" of the underlying offenses. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Scarlett v. Sec'y, Dep't of Corr.*, 404 F. App'x 394, 400 (11th Cir. 2010). Where a petitioner pleaded guilty, and therefore did not have the evidence in her case evaluated by a jury, the standard nevertheless remains the same – i.e., the movant still must show that, "in light of all the

11

evidence, it is more likely than not that no reasonable juror would have convicted [her]." *Bousley*, 523 U.S. at 623 (internal quotations omitted); *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 114 (2d Cir. 2000). The actual innocence exception is "exceedingly narrow in scope," and the movant must demonstrate that she is factually innocent rather than legally innocent. *Bousely*, 523 U.S. at 623; *San Martin v. McNeil*, 633 F.3d 1257, 1267-68 (11th Cir. 2011).

Pretermitting whether Movant's argument constitutes a claim for legal innocence rather than factual innocence, Movant has not provided any "new, reliable evidence" which would demonstrate that it is more likely than not that no reasonable juror would have convicted her. Moreover, after having thoroughly reviewed the case law following *Flores-Figueroa*, the undersigned concludes that Movant has failed to demonstrate that she is actually innocent of aggravated identity theft under *Flores-Figueroa*.

Indeed, Movant's only argument regarding her actual innocence is that the Government failed to prove that she knew that the identity used to commit bank fraud actually belonged to another person. Such knowledge, however, can be based on circumstantial evidence or even common sense. *See United States v. Gomez-Castro*, 605 F.3d 1245, 1249 (11th Cir. 2010) (clarifying that the

12

Government "can rely on circumstantial evidence about an offender's misuse of a victim's identity to prove the offender knew the identity belonged to a real person" and that such knowledge "can be inferred reasonably based on ordinary human experience for which no special proof is required; a trier of fact can rely on common sense").  The Government has demonstrated the requisite knowledge through both of these means.

During the plea colloquy, the Government described the fraudulent scheme as follows:

> Your Honor, if this case were to go to trial, the Government's evidence presented through various witnesses, including some of the co-defendants and through documentary evidence such as the bank checks themselves, the true account holders as well as photographs taken in various stores would establish that [Movant] had a relationship with DeMarco Statham.  DeMarco Statham, the Court may recall, has been before you in his own plea.  And Mr. Statham was basically running a counterfeit check scheme. He was getting the account information from a person named Penny Brown at SunTrust Bank.  When he got the account information he would have produced identifications, that is, driver's licenses and credit cards, that matched the account name, and also produced checks, counterfeit checks, with that account name and number.  He then utilized various people to cash those counterfeit checks, and [Movant] was one of those people that was used by DeMarco Statham.  Again, she had a relationship with him and at his request she would from time to time drive people to various retail establishments to – for the sole purpose of cashing these checks.

13

> What Mr. Statham would do is have a check casher go into various stores. He knew what stores to target based on the kind of check cashing or check – the system they used to verify checks, and they would buy merchandise and they would give that merchandise back to DeMarco Statham. He would sell that merchandise for some percentage of its value. He would pay the drivers and the check cashers for doing such. Again, these were counterfeit checks such that when they were presented to the bank for cashing they would not be – they would not be honored. And, in fact, again under the last count, Count 26, the way that was carried out was to have some identifications of these people. In Count 26 a specific person is named Liz Atwood. There was a driver's license in her name, her checks were counterfeited, people would drive around to the various banks and cash checks that purported to be from Ms. Atwood and were not.

(Doc. 140 at 15-17). Following this proffer, Movant admitted that she knew that: (1) her co-defendant had created checks from accounts on which he did not have permission to write checks; (2) the person she drove to a store used those counterfeit checks to buy merchandise, and (3) Movant assisted that person with possessing and using a fake identification that matched the names on the account on which the counterfeit checks were written – in order "to commit fraud on this bank account that didn't belong to her." (*Id.* at 18-19). Movant's present claim that she had no knowledge that the accounts and identities were linked to actual persons is disingenuous at best, as the success of the entire scheme necessitated that the she and her co-defendants use the names and identities of actual people

14

authorized to sign checks on those accounts. Thus, there is sufficient evidence in the record that Movant knew that the stolen means of identification belonged to another person. *See, e.g.*, *Flores-Figueroa*, 129 S. Ct. at 1893 (stating that "in the classic case of identity theft" where a defendant has used another person's identification information to get access to that person's bank account, the Government can prove knowledge with little difficulty); *United States v. Holmes*, 595 F.3d 1255, 1258 (11th Cir. 2010) (finding evidence of knowledge was sufficient where defendant used victim's identification information to obtain a line of credit to purchase a car because "a reasonable jury could have found that [the defendant] would not have sought credit using [the victim's] information if [the defendant] were not confident that [the victim] likely had an actual credit history"); *United States v. Iyamu*, 393 F. App'x 667, 672-73 (11th Cir. 2010) (holding evidence that defendant applied for credit card using victim's social security number sufficient to establish knowledge because a jury could have inferred that the defendant knew that the victims likely had an actual credit history and therefore were real persons); *United States v. Ehrlich*, 384 F. App'x 879, 882 (11th Cir. 2010) (holding sufficient evidence supported the knowledge element where evidence established that the defendant successfully used the victim's

15

identification to obtain fairly large amounts of credit on various occasions). *See also United States v. Smith*, 404 F. App'x 884, 886 (5th Cir. 2010) (finding sufficient knowledge where accountant wrote fraudulent checks on client's bank account and forged signatures on the checks made payable to herself, because "the success of the scheme necessitated that she use the names of the actual people with authorization to sign the checks."). As such, Movant has failed to demonstrate that she is actually innocent of aggravated identity theft, her claims are time-barred and/or procedurally defaulted, and this Court cannot review the instant § 2255 motion.

IV.    Conclusion

Based on the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Movant Telisha Watts's motion to vacate sentence [Doc. 137] be **DENIED**.

V.    Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2253(c)(2) provides that a certificate of appealability

16

("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." In order for the certification requirement to fulfill its function of weeding out frivolous appeals, a court should not automatically issue a COA; rather, the applicant must prove "something more than the absence of frivolity" or "the existence of mere 'good faith' on his or her part." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

Movant need not prove, however, that some jurists would grant the § 2255 motion. *See id.* "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *See Lamarca v. Secretary, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325). In other words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Based on the foregoing discussion of Movant's claims, reasonable jurists would not find "debatable or wrong" the undersigned's determination that Movant's claims are time-barred and/or procedurally defaulted and that she did not demonstrate actual innocence. *See Slack*, 529 U.S. at 484.

17

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be **DENIED**.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**IT IS SO ORDERED** this 27th day of July, 2011.

_____
C. CHRISTOPHER HAGY
UNITED STATES MAGISTRATE JUDGE

18